```
 1                     UNITED STATES DISTRICT COURT
                          DISTRICT OF MINNESOTA
 2

 3     ------------------------------------------------------------
                                      )
       Animal Legal Defense Fund; and )   File No. 17CV4496
 4     Lockwood Animal Rescue Center,  )   (JNE/HB)
                                       )
 5              Plaintiffs,            )
                                       )
 6     vs.                            )   Minneapolis, Minnesota
                                       )   April 13, 2018
 7     Fur-Ever Wild; Wolves, Woods &  )   3:00 p.m.
       Wildlife; and Teresa Lynn       )
 8     Petter,                         )   TRO HEARING
                                       )   Via Telephone in
 9              Defendants.            )   Chambers
       ------------------------------------------------------------
10
                    BEFORE THE HONORABLE JOAN N. ERICKSEN
11               UNITED STATES DISTRICT COURT JUDGE
                                   (TRO)
12
       APPEARANCES
13       For the Plaintiffs:        Animal Legal Defense Fund
                                     Litigation
14                                   ALENE ANELLO, ESQ.
                                     CHRISTOPHER BERRY, ESQ.
15                                   525 East Cotati Avenue
                                     Cotati, CA 94931
16

17       For the Defendants:        Rinke Noonan
                                     GARY R. LEISTICO, ESQ.
18                                   JANE ESCH, ESQ.
                                     PO Box 1497
19                                   Saint Cloud, MN 56302-1497

20
         Court Reporter:            MARIA V. WEINBECK, RMR-FCRR
21                                   1005 U.S. Courthouse
                                     300 South Fourth Street
22                                   Minneapolis, Minnesota 55415

23

24
             Proceedings recorded by mechanical stenography;
25       transcript produced by computer.
```

**P R O C E E D I N G S**

**(3:00 p.m.)**

1

2

3          THE COURT:  This Judge Ericksen.  We're here in

4    chambers on the record on a motion for emergency relief.

5    Plaintiffs, would you identify yourselves please, counsel,

6    for the record, and let me know everybody you've got on the

7    line on your end and then I'll turn to the defendants, but

8    let's start with the plaintiffs.

9          MR. BERRY:  Good afternoon, Your Honor.  This is

10   Christopher Berry with the Animal Legal Defense Fund, and

11   I'm joined on the call with Alene Anello also from the

12   Animal Legal Defense Fund.

13         THE COURT:  Okay.  Anybody else on the line on

14   your end or listening in or?

15         MR. BERRY:  No, I believe that's it.

16         THE COURT:  Okay.  And on the defendant's side,

17   who have we got?

18         MR. LEISTICO:  Yes, good afternoon, Your Honor.

19   This is attorney Gary Leistico, and I have attorney Jane

20   Esch in my office, and we have no one else.  We are on

21   speaker phone, but there are only the two of us in my

22   office.

23         THE COURT:  All right.  Mr. Berry, are you going

24   to be making the argument on the Animal Legal Defense Fund's

25   side?

1              MR. BERRY:  Yes, Your Honor.

2              THE COURT:  Okay.  Go ahead.

3              MR. BERRY:  Well, essentially, we're concerned

4     primarily with the two things that are articulated in our

5     brief.  The first is what we view as an inadequate list in

6     violation of the Court's Order from January requiring five

7     days advance notice of any transfer that that provision, you

8     know, I think clearly required at a minimum that the

9     transferee facility would be identified as part of this

10    notice is that we had some idea or some assurance that

11    animals weren't going to end up at an unscrupulous place or

12    perhaps, moreover, they could even be killed, which is one

13    of, you know, our allegations in the Complaint.

14              So we didn't receive that information, and we're

15    very concerned now with where these wolves could be going.

16    Are they going to be struck in crates in someone's barn

17    somewhere?  Are they going to be sold to an unscrupulous

18    buyer, someone who is not able to take care of them at all?

19    It's not even clear to me that there's even a definitive

20    transfer plan.

21              Under Petters' declaration submitted by this

22    defendant, there's no -- it sounds like he's having trouble

23    even placing it, and so I couldn't see how a notice of

24    transfer could be even if there's no plan to actually

25    transfer the animals.  So that's what we're concerned about

1    in terms of this notice.

2            Now, the second thing is the offering to sell the

3    wolf pups for sale, and it seems like there's not much of a

4    configuring on the staff on that one.  It's just a question

5    of whether an animal who in the past the defendant has

6    called full blooded wolf, that we have DNA evidence of this,

7    you know, 95 percent plus wolf, with no domestic dog

8    identified in that DNA report that we have, whether they're

9    a major animal or not.

10           If they are, then if those pups are offered for

11   sale without any kind of permit and contemplating interstate

12   travel as well, people would have to go to Minnesota for

13   them, and then there would be welfare concerns with that

14   other than that sort of transfer violation is the fact that

15   defendants through the veterinarian declarations submitted,

16   they've admitted that wolves are separated before they're

17   eight weeks of age, which has detrimental effects for their

18   welfare as laid out by our veterinarian who has expertise

19   with exotic animals including wolves.

20           So I think that's, I mean those are our -- that's

21   our position in a nutshell.  I don't know if the Court has

22   any questions about that or wants to hear from the other

23   side now.

24           THE COURT:  Who is going to speak on behalf of the

25   defendants?  Mr. Leistico?

1          MR. LEISTICO:  Yes, Your Honor.  It would be Gary

2     Leistico, I would be speaking.

3          THE COURT:  All right.  Go ahead.

4          MR. LEISTICO:  Thank you.  And so what we see is

5     going on here is that the plaintiffs are arguing that there

6     could be or they have concerns, but they've not articulated

7     that there is in fact any fact to those.  And we did

8     stipulate, and I think the Court is aware, we worked with a

9     magistrate in this matter, that we stipulated to a

10     restraining order reluctantly because we did not think it

11     was necessary but to satisfy the concerns of the plaintiffs,

12     and that that is in place and that holds the status quo,

13     gives them assurances.

14          And what they're doing now, we think is just

15     saying that they think there could be.  I mean I haven't

16     heard anything that they have any proof or any evidence, and

17     we don't think there is any evidence that there's any harm

18     to any animal, whether it's listed or not.  We think the one

19     in-bark sample, and we have not gotten our's back, does not

20     indicate it is an endangered species, that it is a high

21     bred, and that regardless of that, that there is no

22     indication that there is any further violation of the

23     endangered species act that does apply, but they have

24     concerns that it may be.

25          And so they argue in their brief that they have a

1     greater likelihood of succeeding on the merits, but they've

2     not even identified anything on the merits that they've

3     indicated any fact that has occurred.

4          And we are, as you can, I think, judge from the

5     flavor of our brief, and this is something that came to us

6     yesterday.  Ms. Esch and I were on a different matter out of

7     state, we came back, came into the office early and did the

8     best we could to respond to this.  And I appreciate the

9     Court's time in hearing this, but that they just haven't

10    raised anything, that there is kind of this innuendo and

11    supposition, but they haven't identified any particular

12    fact.

13         And we do believe, as you can see from our

14    documents, that, and I found out this yesterday based on

15    inquiries once the plaintiffs filed this additional request

16    for leave from contacting the local county attorney, from

17    the local attorneys, county attorney's office, that Lockwood

18    without any notice to us or to my client in the state case,

19    has apparently set up a deal with the county attorney's

20    office to take these wolves, and it's a request in this

21    case, which I don't think is based on any law, and it's

22    constitutional to ask a federal court to take private

23    property from one person and give it to another person.

24    Maybe there's a violation of the Endangered Species Act, we

25    don't think so.  But there's no right that we can find that

1      the plaintiffs have a basis to seek the Court to just

2      transfer jurisdiction.

3             And we think that, at least one of the plaintiffs,

4      Lockwood, is seeking to use the state order, which requires

5      the animals, not just high bred animals, but also any other

6      type of exotic animals under the ordinance to transfer to

7      Lockwood, and that they are misusing the court system in the

8      state proceedings to have that happen, and now they're

9      coming into district court to make it more difficult to have

10     anyone agree to take these animals.

11            And so Ms. Petters is doing everything she can to

12     comply with all of these orders, and we now have two, a

13     state and federal matter that is being heard in expedited

14     hearings.  I have to be in Hastings, Dakota County,

15     9:00 a.m. Monday morning to try to deal with that.  And so

16     we just don't think there's anything new here to be heard by

17     the Judge.

18            The parties in good faith entered into this

19     earlier order.  I did not think and my client did not think

20     there was merit to that.  We tried to work with the

21     magistrate and the plaintiff as good faith and entered into

22     that order, and we just don't see there's any basis to do

23     anything further.  And anything further would make it that

24     much more difficult for these animals to find a safe place

25     to go.

1        So we do ask the Court to deny their request for

2   additional relief.  I think the parties are continuing to

3   work together through discovery.  There was a site visit.

4   We have, I think, probably about 26 or 27 DNA samples that

5   we will all hear back from.  Everyone will have a better

6   idea of what is happening with the actual DNA of those

7   species.  The one we have now, all we know is not a purebred

8   wolf under the Endangered Species Act, and there may be

9   additional proceedings that this Court will have to decide

10   what that means.  But at this time, I think it means it's

11   less likely than not that this is a listed species.  It is

12   in fact a high bred.

13        So we are asking to keep this moving forward and

14   not just additional, you know, issue more complications than

15   to the state proceeding to have Ms. Petters work with the

16   local county attorney's office and the township attorney,

17   which we're doing.  I talked to both of those yesterday and

18   today, and we're doing that in good faith, and we're trying

19   to take care of that, but there's a lot of moving parts

20   here, and this is making it much harder.  And we believe

21   plaintiffs want to make it much harder so they can take

22   these animals.

23        So we just ask the Court to deny this motion.  We

24   have no problem providing the Court notice of where these

25   animals go, but as we set out in our declarations, and I

1    understand this came in late, and I appreciate the Court's

2    indulgence on that.

3           But I mean she has two vehicles parked in her

4    driveway to the best of my knowledge right now.  They were

5    there last night and this morning, and that they're

6    following and blocking vehicles coming out of her property

7    to keep these animals from moving, and we believe in good

8    faith they are connected to Lockwood.  We know they're

9    contacting the county and the township and the county

10   attorney's office.

11          So we're asking to just let Ms. Petters do the

12   best she can under these orders, and that the plaintiffs

13   have not provided any additional evidence to change the

14   status quo, which is already protected by an order.

15          THE COURT:  Thank you.

16          The Court has before it two separate matters then:

17          First, is a request to enforce an aspect of the

18   Court order that was issued pursuant to the parties'

19   agreement some time ago.  That order being the January order

20   that you were talking about, January 8th.

21          And a second motion is a new request for emergency

22   injunctive relief having to do with the wolf pups.  Let's

23   separate those and deal with the motion to enforce the Court

24   order first and foremost.

25          Mr. Berry, what evidence can you point to to

1    indicate that the relevant paragraph of the January 8th

2    order is being violated?  And let me just ask you if I've

3    identified the right paragraph.  I think you're talking

4    about paragraph 2, which reads, and this was, of course,

5    drafted by the parties:

6           "Defendants will provide plaintiffs with five days

7    advance notice of any transfer of wolves to another

8    facility.  Information identifying the transferee facility

9    provided under this provision is deemed confidential by

10   defendants, and absent Court Order, plaintiffs shall not

11   disclose such information to any third parties unless such

12   information is independently obtained or publicly available

13   from other sources."

14          Is that the provision of the order that we're

15   talking about?

16          MR. BERRY:  Correct, Your Honor.

17          THE COURT:  There are two parts of that it seems.

18   One is the advance notice, and the other is handling

19   information that identifies the transferee facility.  Are

20   you alleging that the defendants are violating or have

21   violated the five days advance notice of any transfer?  That

22   there's a plan transfer and that you haven't gotten your

23   required five days notice?

24          MR. BERRY:  Yes.  So let me untuck that a bit.

25   There are, I think, two concerns that we identified in our

1    brief.  The first is that the notice requires that the

2    transferee facility be identified.  And the letter that we

3    received of the intent to transfer a couple days ago does

4    not identify the transferee facility.

5              In fact, in defendant Theresa Petters' declaration

6    submitted today, paragraph 5, you know, she says that people

7    who might take the wolves are "extremely concerned because

8    of the Temporary Restraining Order that requires their

9    facility information to be provided to the plaintiff."  So I

10   think that's really the only reasonable reading of that

11   notice provision.

12             THE COURT:  Okay.  Let me stop you there.  First

13   of all, setting aside whether there's a requirement to

14   identify any transferee facility, are you saying that there

15   have been wolves that have been transferred and that you

16   haven't been given five days advance notice that they would

17   be transferred?

18             MR. BERRY:  No.  It's about the adequacy of the

19   notice.

20             THE COURT:  Well, no, my question is have any

21   wolves been transferred?  Do you allege that wolves have

22   been transferred?

23             MR. BERRY:  No, not to the best of my knowledge.

24             THE COURT:  I can only go by what is in the

25   papers, so there's, just to be clear because I didn't see it

1    but that's not to say that it wasn't there, but, so no

2    allegation here that there has been a transfer?

3              MR. BERRY:  Correct.

4              THE COURT:  What evidence do you have that there

5    will be a transfer?  I guess that's the question, whether

6    there will be a transfer and then we can count back to see

7    whether there was notice five days before that.  What date

8    do you allege that a transfer is going to happen?

9              MR. BERRY:  So that's the tricky question, Your

10   Honor.  The Anello Declaration, Exhibit 1, contains the

11   letter of notice that we received from the defendant.  I

12   think it was April 10th.  And it says that she intends to

13   transfer all but one wolf, so approximately 50 wolves.

14             THE COURT:  Okay, hold on.  Give me a second, if

15   you would, so I can get that letter in front of me.  It

16   says, "Dear Christopher and Alene"?

17             MR. BERRY:  Yes, I believe that's the one, Your

18   Honor, one page.

19             THE COURT:  All right.  "Pursuant to the Court's

20   Order, this will serve as intent to transfer.  As you know,

21   we were ordered to get everything transferred by

22   April 16th."

23             Okay.  So this is a letter saying we're going to

24   have them all transferred by April 16th.  So your complaint

25   about that notice is that it's noncompliant with the

1    January 8th order requiring notice because you read that

2    sentence as saying notice that says who you're going to

3    transfer these animals to, not just that you're going to

4    transfer them, right?

5              MR. BERRY:  Yeah, and there's two other issues

6    with that notice as well.

7              First of all, they're either going to transfer it

8    before April 16th, but they don't say that they're going to

9    wait until April, you know, April 15th to start the

10   transfer, which would be five days after we receive the

11   notice.

12             And then in addition to that, the defendant's

13   declaration from Ms. Petter today dismisses that they don't

14   even have a place for all those wolves to go.  There's not

15   even a definite transfer to notice of them in the first

16   place.  Those would be our issues with the notice which we

17   think is inadequate.

18             THE COURT:  So defendants, first of all, I see the

19   letter.  I see the reference to paragraph 2 of the order.  I

20   don't have any reason to think that there's going to be a

21   transfer in less than five days.

22             So it says we look at the five day provision of

23   the order pursuant to that.  Please note that more than five

24   days we have to have the wolves gone.  Here's your notice

25   that we're going to have the wolves gone by then.  So with

1    respect to plaintiff's argument that they might be gone

2    sooner than that, I think that is not supported by any of

3    the documents that I see here.

4         I do have an interest in your response to the fact

5    that there's nothing in the notice about where the animals

6    will be transferred to though.  The plaintiffs say that the

7    first sentence of paragraph 2 says you have to tell them

8    where the wolves are going.  They say they don't.  What do

9    you have to say about that?

10        MR. LEISTICO:  This is Gary Leistico, Your Honor.

11   I believe you're asking me to answer that question.

12        THE COURT:  Yes, I am.

13        MR. LEISTICO:  So my client contacts me.  The

14   plaintiffs know well that that there is this order with the

15   township that requires that the wolves are gone by midnight

16   on I believe it's the 16th.  So it's Sunday night, this

17   Sunday night at midnight, so they knew about that.

18        There had been a hearing at the township Monday

19   night.  That the township was going to consider whether to

20   extend the deadline, and I understood that it was likely the

21   township would.  And I understood that "likely" doesn't mean

22   it will.  There is still a Court Order in place, but that's

23   the information I got.

24        And so when I found out Tuesday, when I found out

25   that the township did not grant further relief to extend

1   that deadline, I felt responsible under the Court's Order to

2   notice the plaintiffs with the information I had, which was

3   that she would be attempting to comply with the township

4   order, which is to have the animals subject to that order

5   moot by midnight on Sunday, and so I so noticed it because

6   that's what the Court Order did.

7              THE COURT:  Right.

8              MR. LEISTICO:  I did not know, and I still don't

9   know that they would be transferred by then, and she may

10  very well be in violation of the township order.

11             THE COURT:  Which is not a violation.

12             MR. LEISTICO:  It's not a violation yet, right.

13  And I simply don't know who the people are that would take

14  it.  And our point in our pleadings were that I'm not saying

15  the two attorneys on the phone here.  I have no basis to say

16  that, and I'm not alleging that, but that Lockwood Animal

17  Rescue Center is seeking to frustrate that ability so that

18  the result is they get the animals Monday morning, which is

19  exactly the relief that they've requested in this federal

20  case, that they would take them.

21             And so I'm just doing the best I can with the

22  information I have, which is to notice plaintiff's counsel.

23  I'm not hiding anything.  As soon as I know on Tuesday that

24  the township denied the additional request so that she's

25  going to do her best to get them out of there by midnight

1    Sunday, I did the best I could which is what the order

2    required, and I said that.  But no one has told me they're

3    moving, and I have no evidence that anybody in particular is

4    taking them, and as soon as I know that then I'll deal with

5    that.

6              I am asking the Court to consider allowing that we

7    notice the Court.  We're not trying to ferret these animals

8    off into the dark.  We understand there's a Court Order and

9    that the plaintiff will be or the defendant will be held to

10   answer for that.

11             But the concern is right now that, and I literally

12   got off the phone three minutes before this phone call with

13   three parties that have considered taking them.  They saw

14   what plaintiffs filed yesterday in court, and they're

15   concerned whether or not they're comfortable taking them.

16   And I do think this is part of the effort to keep the wolves

17   from going anywhere, so Lockwood could do it.

18             Not short, regardless of any of that, I think the

19   Court has understood this, I noticed what I knew, and the

20   plaintiffs are saying, well, we think something else is

21   going on.  Well, then they know more than me, and they

22   haven't identified anything to the Court that something else

23   is going on.

24             So, Your Honor, I don't know where they're going.

25   I am now asking you to allow us to notice you, and if you

1    know the order is the order.  I will ask my client to comply

2    with that, and we will send that out to the two attorneys

3    Mr. Berry and his assistant, and we will notice them.  We

4    will hold them to this order, and we will ask you for relief

5    if they go anywhere on the Internet or otherwise because

6    this is all over the Internet, and it is getting to be very

7    detrimental to my client's ability to comply with these

8    orders, the township and this one.

9            THE COURT:  All right.  I see no violation of the

10   Court Order at this point.  I see an ambiguity in the

11   language that was drafted in compromise.  And the ambiguity

12   has to do with whether notice of transfer means notice of

13   the identity of a transferee.

14           I see that starting with the second sentence of

15   paragraph 2, that information that identifies it is

16   considered confidential, and one could say that if the

17   transferee is revealed, then the defendant has to keep it

18   confidential or the plaintiff has to keep it confidential.

19   It could be read to say you take the whole paragraph

20   together, the most reasonable reading is that notice means

21   notice not only of the fact but also the location.  It is

22   not clear, and we might as well take this opportunity to

23   clarify that.

24           The concerns that are raised in the Complaint and

25   where the focus of the January 8th Order have to do with the

1    defendant allegedly killing wolves.  And if that's the

2    concern, it doesn't matter who else has them as long as it's

3    not somebody who the defendant has engaged to kill the

4    wolves.  But given that that's the overall concern, it seems

5    that if the defendant just provides notice to the Court, and

6    you can go ahead and provide that under seal, that will take

7    care of that ambiguity.

8              So it does not appear that there's any, there's

9    nothing for the Court to do with respect to the first aspect

10   of the plaintiff's motion.

11             So let's turn to the second, and this is new

12   information not covered by the original motion for a

13   Temporary Restraining Order.  And this has to do with the

14   plaintiff says that the defendant is planning to sell wolf

15   pups before they're eight years old and that a sale of a pup

16   younger than eight years old, eight weeks old, constitutes

17   harm under the act and so has to be enjoined.

18             Mr. Berry, I have taken a look.  Actually, I have

19   it in front of me.  You're talking about the Dr. Rebecca

20   Walser wolf pup?

21             MR. BERRY:  Correct.

22             THE COURT:  And so I was looking for something in

23   here that talks about specifically the eight weeks because

24   some of what Dr. Walser talks about applies to brand new

25   pups.

1          For example, paragraph 4, knee I don't neonatal

2     wolf pups, born blind, et cetera.  You can't tell how long

3     those paragraph 4 infant characteristics last.

4          Paragraph 5 talks about the first weeks.  I don't

5     know how long.  There's a reference of very young.  I don't

6     know exactly what that means.

7          And then paragraph 7 does specifically talk about

8     the first eight weeks, and that being important to lifelong

9     well-being, behavioral health.  A wolf is a pack animal, and

10    they rely on their mother and other pack members to

11    socialize and learn appropriate behavior.  And I can't tell

12    if that is a reference to wolves that are in the environment

13    of captivity that these wolves are.  I think that there's

14    some case law that talks about there being a little bit of a

15    different standard for animals, at least animal hybrids that

16    are kept in a -- like a -- not in the wild.

17         And then I'm looking at the, there's another

18    affidavit from a different veterinarian, and this is

19    supplied by the defendant, I guess.  This is this Dr. Sharon

20    Dreyfuss, and that veterinarian says that they have

21    familiarity with the defendant's actual handling of wolf dog

22    puppies.  It says that they're wolf dogs, and alleges that

23    in paragraph 4 "the removing of puppies prior to eight weeks

24    in a situation where the wolf dogs will not be in the wild

25    is beneficial."

1          So is there anything else, Mr. Berry, that you

2    want to say in support of your -- I guess what is the motion

3    exactly?  And what do you allege, what are you asking for

4    precisely?

5          MR. BERRY:  Your Honor, we're asking for a Court

6    Order that would prohibit separating of the wolf pups from

7    their mothers before they're eight weeks old.  Your Honor,

8    if I could just touch on a couple of the concerns that you

9    articulated.

10          You know, first, our veterinarian does have

11    experience with exotic animals, which is something that this

12    defendant doesn't have.  But, you know, pause that for a

13    second.  And then, additionally, what we're talking about

14    here are endangered animals.  I don't think that hybrid

15    would be a fair way to characterize them.

16          THE COURT:  Well, if I could just interrupt you.

17    The advertisement that you've attached, which I think is the

18    basis for your motion, talks about hybrids.  So is there

19    something that would support your assertion that wolves and

20    not hybrids are being talked about in the sale?

21          MR. BERRY:  Yes, Your Honor.  So we performed a

22    site visit as part of our discovery a month ago, and so only

23    I don't think there's a disagreement between what I call

24    wolves, they're calling wolf dogs.  There's not some other

25    category of animal that the defendants have custody over.

1    So the real question is if, how to, you know, what label to

2    give those animals.

3              THE COURT:  Okay.  So even though the

4    advertisement that gives rise to your temporary restraining

5    order motion says "hybrids," you say that's not really

6    referring to hybrids.  They're advertising wolf dog mixes

7    for sale, but we say that if they have anything for sale

8    it's a real wolf.  I mean it's a hundred percent wolf.

9              MR. BERRY:  Precisely, Your Honor.  Or it's not a

10   hundred percent or just a hair underneath, which even in the

11   wild wolf population, as I understand it, you can't find

12   anything that's a hundred percent due to the way the

13   genetics work and so forth.

14             So being, you know, that they are gray wolves or

15   very, very, very high percentage gray wolf, they, you know,

16   they are endangered animals and seem like they're being

17   essentially treated as pets here being born and separated

18   from their mothers at a few weeks of age and reared as, you

19   know, essentially needed animals, pets.

20             Even if they were dogs, you know, I think it's

21   pretty much common sense that you're not supposed to

22   separate them before eight weeks of age.

23             THE COURT:  It might be common sense, but it might

24   not be something that this Court has jurisdiction over.

25             MR. BERRY:  Sure, Your Honor.

1          Then, lastly, with regards to whether captive and

2     endangered wild life are treated differently.  I'm not aware

3     of any distinction between the two as far as the harm and

4     harass standards go.  In fact, in the Eighth Circuit just

5     ruled yesterday on an endangered species act case that my

6     organization is also involved with, and it doesn't make any

7     distinction between the, you know, the husbandry or welfare

8     or take standards.

9          THE COURT:  No, that obviously wasn't part of the

10     tiger and lemur discussion.  But since you bring up that

11     case, the Court there did talk about the Code of Federal

12     Regulations definition of harm, and could you articulate

13     your argument about why sale or why separation before eight

14     weeks qualifies as harm not in a common sense way but in a

15     Code of Federal Regulations definition way as cited by the

16     circuit?

17          MR. BERRY:  Well, Your Honor, without having

18     everything mapped out in front of me right now, I believe

19     it's with this general husbandry practices, and I'm not

20     aware of any general husbandry practice that allows for

21     separation of these endangered animals or wolves at a young

22     age from their parents for the pet trade.

23          THE COURT:  Okay.  Let me hear from the

24     defendant's counsel on this point.  We'll call it the pup,

25     wolf pup, wolf hybrid pup point.

1          MR. LEISTICO:  Gary Leistico, thank you, Your

2     Honor.  I mean what we see plaintiff's as arguing is

3     everything harmed unless it's specifically allowed by some

4     CFR statute is not harm, and I think that's putting it

5     upside down.  They can't cite to a specific code or statute

6     that what they are claiming is harm is harm, and yet they're

7     saying because it's not negatively considered; therefore,

8     it's harm, and they're asking you to consider it, so.

9          And I think the Court's point is correct.  There's

10    nothing that would indicate that that's harm in a legal

11    sense, whether that would sound bad or not from a human

12    sense I think is a different issue.  The courts haven't

13    allowed that as a basis of harm.

14          And, moreover, the declaration of Dr. Dreyfuss,

15    our vet, and I spoke to her at length about this this

16    morning, and these are not wild animals.  These are captive

17    animals, and the realities are always going to be captive

18    animals.  It would be probably harmful to release them to

19    the wild if not illegal under state law and federal law.

20    They would never survive.  And that was our vet's point is

21    that they're going to be around people, and they need to go

22    socialize with other animals and with humans for the safety

23    of animals and for the people that are handling the animals

24    and that is why this is done.

25          It's also a matter that these puppies are often

1    harmed by the mothers in these situations, and so to remove

2    the puppies from the mother is actually a safeguard to the

3    pups.  And I don't know, and I've not heard any facts that

4    these animals are removed at any particular time.  I would

5    imagine a week is different than eight weeks, but I can't

6    find any different legally and practically other than I

7    agree with plaintiffs it's a lot of work.  I mean I've had

8    kids.  We've had dogs.  We've had puppies that had trouble

9    with the parents, and we fed them, and it's a great deal of

10   work, but it's not harm to the animal to commit to a great

11   deal of work.

12         And so we just don't think there's any merit to

13   this.  And I mean plaintiffs want the Court to grant them

14   possession and ownership of these animals, and they are

15   wolves for warriors.  I mean their purpose in these animals

16   and what they want to use them for is not to try to

17   reintegrate them into the wild, but it is to take these

18   animals around to help people socialize.  That's a

19   different, I mean regardless of the merits on that, that's

20   the purpose of that.  So it's disingenuous for the

21   plaintiffs to say for defendants to do exactly what the

22   plaintiffs want to do with the animals, that that somehow is

23   illegal and harmful.

24         And, again, I think they're supposing it could be,

25   and they've not cited to any authority because there is no

1    authority for it.  So we just ask for the Court to enjoin

2    this.  I mean we understand that these are protected

3    species.  We don't think they are, and the Court will answer

4    that at some point.  But if they are, this isn't a legal

5    harm, and if they're not endangered species, and they're not

6    subject to the ESA, then it's not a merit what these laws

7    say.  But regardless, even if the laws apply, there is no

8    harm shown here.

9              MR. BERRY:  If I could interject one point on the

10   authority, we did cite another district court opinion from

11   just a couple months ago, *People For Ethical Treatment of*

12   *Animals v. The Wildlife In Need*, 2018 Westlaw 828461 from

13   Indiana, And a preliminary injunction was entered in that

14   case to prevent separation of tiger cubs from their mothers.

15             THE COURT:  Thank you.  Yeah, in that case, I did

16   appreciate that citation and read the case.  In that case,

17   the tiger cubs were being subjected to cruel and inhumane

18   treatment during the separation, so the Court's focus was on

19   the separation for the purpose of subjecting these, I don't

20   know what they are, tiger cubs, the baby tigers to like swim

21   time and some other things that were really distressing to

22   the infant animals.  And so that case cannot be read as

23   standing for the proposition that there's some particular

24   number of weeks old that a young wolf or wolf dog

25   combination has to be before it can be reared by humans as

1    opposed to its mother.

2         So that seemed like a -- well, I guess I won't say

3    more about what the Court described some -- I guess I will.

4    Some pretty bad things that were being done to those tigers.

5         MR. BERRY:  Yes, Your Honor.  Certainly, there

6    were additional allegations in there.  It's not a perfect

7    analog.  I do think it stands for the proposition, strongly

8    supports the proposition that, you know, even the separation

9    itself absent those additional abuses has detrimental health

10   and behavioral effect when at the end of the day these are

11   wild and endangered animals.

12        THE COURT:  Okay.  Thank you.  All right.

13        MR. BERRY:  Thank you, Your Honor.

14        THE COURT:  So we have the affidavits of the

15   doctors.  I do not have any indication of an actual

16   impending sale.  We have the shadow of the state case

17   hanging over this hearing.  The state case being one where

18   the Dakota County District Judge said that the animals have

19   to be gone by Monday and giving the sheriff the authority to

20   enforce that order.  So there's only so much that can happen

21   between now and then anyway.

22        The Court is not persuaded that the extraordinary

23   powers of injunction are needed to prevent the sale of pups.

24   Assuming that they either are all wolf or that the wolf dog

25   hybrid qualifies under the ESA, 50 Code of Federal

1    Regulations Section 17.3 defines harm for purposes of taking

2    an endangered species specimen as an act, which actually

3    kills or injures wild life.  Such act may include

4    significant habitat modification or degradation where it

5    actually kills or injures wild life by significantly

6    impairing essential behavioral patterns including breeding,

7    feeding or sheltering.

8          At this time, the Court is not persuaded that the

9    plaintiff has met its burden to show a likelihood of success

10   on the merits on that claim.  So that motion is denied.

11         I am mindful of the fact that this will not be the

12   end of the matter and that a lot of the urgency that gives

13   rise to the fact that we're having an emergency hearing here

14   this afternoon arises not from anything really having to do

15   in the federal case but because you've got a time line

16   looming in the state case.

17         The state case will proceed as it will proceed.

18   What I'm going to let you know is that the Magistrate Judge

19   in this case is expected to be in town next week, and I

20   imagine would be available should you need anything else on

21   Monday or Tuesday if something comes up.  I think it's a

22   little unforeseeable exactly what's going to happen on

23   Sunday and Monday.

24         But that's going to conclude the hearing with

25   respect to these specific motions.  So that's the motion to

1    enforce the Court order, but the Court order of January 8th

2    is modified as I set out earlier and that again is to

3    require that the five-day advance notice include

4    identification of the transferee facility.  Identity of the

5    transferee facility may be provided to the plaintiffs in

6    which case plaintiffs will handle that information as set

7    forth in paragraph 2 of the January 8th Order.  Or at

8    defendant's option, it may provide that identification

9    information to the Court and that may be filed under seal.

10           The motion for emergency injunctive relief on the

11   new basis not set forth specifically in the Complaint that's

12   on file or in the original Temporary Restraining Order

13   motion materials is denied.

14           So that concludes the hearing.  And, again, if you

15   need or want to communicate with the Magistrate Judge, you

16   should do that directly as the need arises, and I will let

17   the Magistrate Judge know that you may be in contact.

18           All right.  There being no further business, we

19   will be in recess.  Thank you both.

20           COUNSEL (collective response): Thank you, Your

21   Honor.

22               (Court adjourned at 3:48 p.m.)

23                      *     *     *

24

25

1

2                         REPORTER'S CERTIFICATE

3              I, Maria V. Weinbeck, certify that the foregoing is

4       a correct transcript from the record of proceedings in the

5       above-entitled matter.

6                    Certified by:  *s/ Maria V. Weinbeck*

7                                   Maria V. Weinbeck, RMR-FCRR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25